IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| LATAVEIA ALLEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br><br><br><br><br><br><br><br>v.<br>SRP FEDERAL CREDIT UNION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  1:24-cv-07476-CMC<br><br>**MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT UNDER RULES 12(b)(1) OR 12(b)(6) AND MEMORANDUM IN SUPPORT** |
| NORMAN BLACK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SRP FEDERAL CREDIT UNION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  1:24-cv-07519-CMC |
| GE-QUOIA WHITFIELD, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SRP FEDERAL CREDIT UNION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  1:24-cv-07537-CMC |

| | |
|---|---|
| ROSEMARY ORTIZ, on behalf of herself and all Others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SRP FEDERAL CREDIT UNION, <br><br> Defendant. | Case No:  1:24-cv-07671-CMC |

| | |
|---|---|
| THERESA MCGRIER individually and on behalf of all others similarly situated <br> Plaintiff, <br><br> v. <br><br> SRP FEDERAL CREDIT UNION, <br><br> Defendant. | Case No.:  1:24-cv-07695-CMC |

| | |
|---|---|
| SHANNON DUNN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SRP FEDERAL CREDIT UNION, <br><br> Defendant. | Case No.:  1:25-cv-00210-CMC |

| | |
|---|---|
| RICKY CHASE, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SRP FEDERAL CREDIT UNION, <br><br> Defendant. | Case No.:  1:25-cv-00312-CMC |

Defendant SRP Federal Credit Union ("SRP") moves this Court to compel arbitration and to stay this action, or in the alternative, to dismiss the Amended Consolidated Class Action Complaint (hereinafter "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing or Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## I.    INTRODUCTION

Plaintiffs Shannon Dunn ("Dunn"), Theresa McGrier ("McGrier"), Ricky Chase ("Chase"), Norman Black ("Black"), Lataveia Allen ("Allen"), Ge-Quoia Whitfield ("Whitfield"), and Rosemary Ortiz ("Ortiz") (collectively, "Plaintiffs") and SRP entered into a Membership Agreement which contains an arbitration, jury trial waiver, and waiver of class action provision (the "Arbitration Agreement") that covers all claims asserted here and requires that any disputes arising from Plaintiffs' accounts or relationships with SRP be resolved exclusively through binding arbitration. The Arbitration Agreement is valid and enforceable pursuant to the Federal Arbitration Act ("FAA"), or in the alternative, should the Court decide the FAA does not apply, the agreement nonetheless should be enforced under South Carolina law.   Plaintiffs also lack standing under Rule 12(b)(1) to maintain their claims against SRP. Plaintiffs have not plausibly pleaded that they have suffered an injury in fact, much less any injury that is fairly traceable to the SRP data incident. Plaintiffs have also failed to establish that they have standing to seek injunctive relief. Finally, Plaintiffs have also failed to state a claim for relief under Rule 12(b)(6).

Accordingly, SRP respectfully requests that the Court grant the Motion to Compel Arbitration and stay the case until the completion of arbitration. In the alternative, the Court should dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) or 12(b)(6).

---

[1] As set forth in Local Rule 7.04, a full explanation of the motion as set forth in Local Civ. Rule 7.05 (D.S.C.) is contained within this motion and therefore a separate memorandum would serve no useful purpose.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Background**

SRP is a federal credit union and is federally insured by the National Credit Union Administration. (Declaration of Douglass Morris ("Morris Decl.") ¶ 3.)[2] Plaintiffs allege that they are members of SRP and that their personal information was compromised in a data incident at SRP that occurred between September 5, 2024, and November 4, 2024 (the "Data Incident"). (ECF No. 52 ¶¶ 1, 12.) Plaintiffs assert eight different causes of action against SRP. (ECF No. 52 ¶¶ 214–305.) The Complaint is silent about the existence of an arbitration agreement between SRP and Plaintiffs.

    **i.     SRP's Membership Process and Membership Agreement**

Like all SRP members, Plaintiffs were required to complete SRP's application form as part of the membership application process and were required to agree to SRP's then-current membership agreement (absent which they would not have been approved for membership). (Morris Decl. ¶ 7.)

Since 2014, SRP's membership application form has contained the following acknowledgement and agreement to be bound by the SRP membership agreement, as amended from time to time:

> Each applicant, authorized user or other party signing herein, (together herein referred to as "applicant(s)") hereby makes application for the account(s)/services and/or membership as indicated and agrees to conform to the Bylaws, as may be amended, of SRP Federal Credit Union ("Credit Union"). I certify that I am within the field of membership of this Credit Union if membership is requested. I/we certify the signature(s) on this card apply to all accounts designated above; and all information provided is true and correct. *I also acknowledge that I have received and agree to be bound by any terms and conditions in this card, and in the*

---

[2] The Morris Declaration submitted in support of this Motion is the same declaration submitted in support of SRP's previously filed motion to compel, or in the alternative, to dismiss (ECF No. 29) because the facts averred therein have not changed.

> *Membership Agreement, Truth-in-Savings Act Rate and Fee Schedule, and any Special Account or other separate Account Service Applications or Agreements as amended from time to time, which are incorporated herein by reference.*

(*Id.* ¶ 8.) On information and belief, the same or substantially similar language, by which applicants acknowledged and agreed to be bound by the SRP membership agreement, as amended from time to time, was also included in SRP membership application forms in use in the period 1996 to 2014. (*Id.* ¶ 9.)

The current version of SRP's membership agreement has been in effect since October 1, 2023 (the "Membership Agreement"). (*Id.* ¶ 10.) The Membership Agreement is the successor to earlier versions of this agreement dating back to the earliest membership of any of the Plaintiffs in SRP, which was in 1996. (*Id.* ¶ 11.) On information and belief, the membership agreements in the period 1996 to the present have included a provision making successive amended agreements binding on all SRP members. (*See id.* ¶¶ 11–12.) The language of this provision in the current Membership Agreement states:

> The Credit Union, in its sole discretion, may change any term or condition of this Agreement, including the method for determining dividends, at any time without notice except as expressly required by applicable law. If applicable laws provide no express time period, then notice ten (10) days or more in advance of the effective date of any change shall be deemed sufficient.

(*Id.* ¶ 11; *Id.* at Ex. A ¶ 34.)

By periodic website updates and other communications, SRP members are kept informed of changes to the membership agreement. (*Id.* ¶ 13.) The current membership agreement is made available to all SRP members through a members-only online portal. (*Id.*) Hard copies of the current membership agreement are also made available to members on request at SRP offices and headquarters locations. (*Id.*)

### ii. SRP's Arbitration Agreement

The current Membership Agreement contains an extensive arbitration clause, which is set

forth, in relevant part, in the Morris Declaration. (*See id*. ¶ 14; *Id*. at Ex. A at 21-23.)

To ensure notice to SRP members of arbitration provisions and any amendments thereto, SRP has followed a policy of providing direct notification to its active members when a new arbitration provision is promulgated and incorporated into the membership agreement. (*Id*. ¶ 15.)

Pursuant to that policy, in June 2021, SRP members with active accounts, including Plaintiffs Black, McGrier, Ortiz, Whitfield, Chase, and Dunn, were notified of certain amendments effective August 1, 2021 to the membership agreement, which updated the arbitration provision through a "Change in Terms" notification that was sent out by either email or letter as specified in each member's membership profile (both the email and letter notice contained identical text) in June 2021. (*Id*. ¶ 16; *Id*. at Ex. B.) Plaintiff Allen was not yet a member of SRP, so she did not receive the June 2021 Change in Terms notification. (*Id*. ¶ 16.)

Subsequently, in July 2023, SRP members with active accounts, including Plaintiffs Black, McGrier, Ortiz, Whitfield, Dunn, and Allen, were notified of a further change to the arbitration provision through a "Change in Terms" notification that was sent out by either email or letter as specified in each member's membership profile (both the email and letter notice contained identical text). (*Id*. ¶ 17; *Id*. at Ex. C.) Plaintiff Chase did not receive this notice because he did not have an active account at the time. (*Id*. ¶ 17.)

The June 2021 and July 2023 notices were sent to the mailing address or email address on file for each Plaintiff with an active account. (*Id*. ¶ 18.) Plaintiffs were required to promptly notify SRP of any changes to their contact information. (*See id*.)

### iii.    Plaintiffs' Membership History

Plaintiff Black opened a joint account and became a member of SRP on March 21, 1996. (*Id*. ¶ 20.) Plaintiff McGrier first opened an account and became a member of SRP on April 23,

2008. (*Id*. ¶ 21.) McGrier opened an additional individual account on March 18, 2011 and a joint account on October 5, 2016. (*Id*.) Plaintiff Ortiz opened a joint account and became a member of SRP on June 12, 2014. (*Id*. ¶ 22.) Plaintiff Whitfield first opened an account and became a member of SRP on August 24, 2015. (*Id*. ¶ 23.) She opened a subsequent account on December 21, 2017. (*Id*.) Plaintiff Chase opened accounts and became a member on August 5, 2019. (*Id*. ¶ 24.) Plaintiff Chase is an active SRP member through May 29, 2022, and thereafter became an inactive member. (*Id*.) Plaintiff Dunn opened accounts and became a member of SRP on December 30, 2019. (*Id*. ¶ 25.) Plaintiff Allen opened accounts and became a member of SRP on June 28, 2022. (*Id*. ¶ 26.)

### iv.     Plaintiffs Did Not Opt Out of the Arbitration Agreement

The Arbitration Agreement provides that a member may opt out of the Arbitration Agreement by phone or written notice if received within 45 days after either: (i) the date the Arbitration Agreement was first delivered or otherwise made available to the member, in paper or electronic form, or (ii) the day the member opened their account, whichever is later. (*Id*. ¶ 27; Ex. A at 23; Ex. C at 22.) Based on SRP's records, maintained in the ordinary course of business, none of the Plaintiffs provided such phone or written notice to SRP of opting out of the arbitration provisions. (*Id*. ¶ 28.)

### B.  Procedural Background

This matter originated as twelve separate class actions. The seven named Plaintiffs in this lawsuit then filed a Consolidated Complaint on April 7, 2025 (ECF No. 19), while the other five Plaintiffs voluntarily dismissed their cases. SRP filed a Motion to Compel Arbitration, or in the Alternative, to Dismiss Plaintiffs' Consolidated Complaint Under Rules 12(b)(1) or 12(b)(6) on May 22, 2025. (ECF No. 29.) Plaintiffs opposed the motion on June 23, 2025 (ECF No. 39) and

re-filed the opposition using the correct caption on June 24, 2025 (ECF No. 40). SRP filed a reply in further support of its motion on July 14, 2025. (ECF No. 46.)

On October 9, 2025, this Court entered an Order Dismissing Plaintiffs' Consolidated Complaint Without Prejudice and With Leave to Amend (the "Order"). (ECF No. 51.) In the Order, the Court found that Plaintiffs Dunn, Allen, Whitfield, and Ortiz had not suffered an injury in fact and therefore did not have standing to pursue claims against SRP. (*Id*. at 7–18.) The Court found that the three remaining Plaintiffs' (McGrier, Chase, and Black) injuries were not fairly traceable to the Data Incident. (*Id*. at 18–22.) This Court also held that Plaintiffs did not have standing to seek injunctive relief. (*Id*. at 22–23.) The Order did not address SRP's arbitration or 12(b)(6) arguments. The Court granted Plaintiffs leave to amend their complaint. Plaintiff filed an Amended Complaint on November 7, 2025 (ECF No. 52). The Amended Complaint offers no additional facts that should change the Court's prior ruling.

## III.   LEGAL STANDARDS

### A.  Motion to Compel Arbitration

"Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as motions for summary judgment." *Cummings v. NC Fin. Sols. of S.C.*, No. CV 3:22-2430-SAL-SVH, 2022 WL 18717553, at *1 (D.S.C. Nov. 30, 2022), *report and recommendation adopted*, No. 3:22-CV-2430-SAL, 2023 WL 2025167 (D.S.C. Feb. 15, 2023). In deciding a motion to compel arbitration, courts may consider evidence beyond the pleadings. *Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020). Once it is established that a valid agreement to arbitrate exists, "the party opposing arbitration must come forward with evidence sufficient to place the entitlement to arbitrate in dispute." *Sunland Logistics Sols. Inc. v. Zhejiang Wanfeng Auto Wheel Co.*, No. 6:20-CV-1470-TMC, 2021 WL 5991085, at *5 (D.S.C.

Apr. 30, 2021) (emphasis added); *see also* 6 C.J.S. Arbitration § 70 ("Statements in motions and briefs do not constitute evidence to be considered by a trial court when ruling on a motion to compel arbitration.").

### B. Lack of Standing Under Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be founded." *Boggs v. United States*, No. CV 1:18-3506-MGL-SVH, 2019 WL 3769878, at *1 (D.S.C. July 26, 2019), *report and recommendation adopted*, No. CV 3:18-3506-MGL, 2019 WL 3766472 (D.S.C. Aug. 8, 2019), *aff'd*, 796 F. App'x 174 (4th Cir. 2020). "Under Rule 12(b)(1), a plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence." *Betz v. St. Joseph's/Candler Health Sys., Inc.*, 630 F. Supp. 3d 734, 745 (D.S.C. 2022). "Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in one of two ways: as a facial attack or as a factual attack." *In re Seizure of 2007 GMC Sierra SLE Truck, VIN: £2GTEK13C1715*, 32 F. Supp. 3d 710, 715 (D.S.C. 2014). When, as here, the challenge is facial, it is based solely on the allegations in the complaint. *See id*. In determining whether jurisdiction exists, the court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Boggs*, 2019 WL 3769878, at *1. Importantly, the factual allegations must be plausible. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("It is established that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up).

### C. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted 'challenges the legal sufficiency of a complaint.'" *Brown-Thomas v. Hynie*, 412 F. Supp.

3d 600, 605 (D.S.C. 2019). While a court must accept as true the facts alleged in the complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation omitted). A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Van Connor v. One Life Am., Inc.*, 546 F. Supp. 3d 458, 461 (D.S.C. 2021).

## IV. THIS COURT MUST COMPEL ARBITRATION IN ACCORDANCE WITH THE ARBITRATION AGREEMENT.

### A. Plaintiffs and SRP are Parties to a Valid and Enforceable Arbitration Agreement Covering Each of Plaintiffs' Claims.

Arbitration clauses subject to the FAA are governed by state-law contract principles. *Scott v. TitleMax of S.C. Inc.*, No. CIV.A. 3:09-1032-CMC, 2012 WL 393365, at *1 (D.S.C. Jan. 17, 2012), *report and recommendation adopted*, No. CA 3:09-1032-CMC-JRM, 2012 WL 384802 (D.S.C. Feb. 6, 2012). "[A]rbitration agreements [are] on equal footing with all other contracts, and require[] courts to enforce them according to their terms." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (internal citation omitted); *see also Regions Bank v. Schmauch*, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it . . . . The law does not impose a duty on the bank to explain to an individual what he could learn from simply reading the document.").

Here, Plaintiffs were required to complete SRP's application form as part of the membership application process and were required to agree to SRP's Membership Agreement "as amended from time to time." (*See* Morris Decl. ¶¶ 7-9; Exs. E-I.) Under South Carolina law, "[i]t is undisputed that one contract may incorporate another by reference." *Shaw v. E. Coast Builders*

*of Columbia, Inc.*, 354 S.E.2d 392, 392 (S.C. 1987); *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 183–185 (4th Cir. 2022) (finding that an arbitration agreement was formed but not compelling arbitration on statutory grounds). By expressly referencing SRP's Membership Agreement in the applications, SRP incorporated the Membership Agreement into the membership applications. *See id.*

All Plaintiffs are bound to the terms of the Membership Agreement, including the Arbitration Agreement contained therein. Plaintiffs Black, McGrier, Ortiz, Whitfield, Chase, and Dunn were duly notified of changes to the Membership Agreement concerning the Arbitration Agreement through the June 2021 Change in Terms notification. (Morris Decl. ¶¶ 16-17; Ex. B.) Plaintiff Allen was notified of the Arbitration Agreement when she became a member in June 2022. (*See id.* ¶ 26.) Subsequently, in July 2023, SRP members with active accounts, including all Plaintiffs other than Plaintiff Chase, who has had an inactive account since May 2022[3], were notified of a further change to the arbitration provision through the July 2023 Change in Terms notice. (*Id.* ¶ 17; Ex. D.) All Plaintiffs received or are deemed to have received (per the terms of Section 23 of the Membership Agreement) the June 2021 Change in Terms notice containing the Arbitration Agreement, and all Plaintiffs, other than Plaintiff Chase, received or are deemed to have received the July 2023 Change in Terms notice noting the change to the jurisdiction and venue section of the provision. (*See id.* ¶¶ 7, 16-18.)

Plaintiffs were given 45 days to opt out of the Arbitration Agreement. (*See id.* ¶ 27.) Based on SRP's records, maintained in the ordinary course of business, none of the Plaintiffs opted out of the Arbitration Agreement. (*Id.* ¶ 28.)

---

[3] Plaintiff Chase is subject to the terms of SRP's August 1, 2021, membership agreement, which includes an arbitration provision that is substantially similar to the Arbitration Agreement in the current Membership Agreement, except for the jurisdiction and venue provision. (*See* Ex. C.)

Last year, the Supreme Court of North Carolina compelled a plaintiff to arbitration in a case involving a credit union. *See Canteen v. Charlotte Metro Credit Union*, 900 S.E.2d 890 (N.C. 2024). In *Canteen*, the credit union could unilaterally "change the terms of this Agreement." *Id.* at 892. The court rejected plaintiff's argument that her silence through her failure to opt out did not constitute acceptance because plaintiff "consented to a change-of-terms provision which permitted the Credit Union to amend terms upon notice . . . ." *Id.* at 897.

Other courts have compelled arbitration in cases with similar facts. *See*, *e.g.*, *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716 (4th Cir. 2025) (compelling arbitration when plaintiffs assented to the original agreement and later assented to modified versions containing an arbitration agreement during service visits, by paying monthly bills, or by receiving email notifications); *Ward v. Discover Bank*, No. 3:19-CV-02124-SAL, 2020 WL 1922908, at *1 (D.S.C. Apr. 21, 2020) (compelling arbitration against plaintiffs who did not initially agree to arbitration but whose contracts contained a change in terms clause).

Additionally, Plaintiffs' claims fall within the scope of the Arbitration Agreement. The Arbitration Agreement specifically states that it applies to:

> [A]ny demand, cause of action, complaint, claim, asserted right, or request for monetary or equitable relief, whether past, present or future, and based upon any legal theory, including contract, tort, consumer protection law, fraud, statute, regulation, ordinance, or common law, which arises out of or relates to your Membership Agreement, your deposit account(s) or loan account(s), the events leading up to your becoming an account holder or borrower (for example, advertisements or promotions), any feature or service provided in connection with your account(s), or any transaction conducted with us related to any of your accounts or services.

(Morris Decl. Ex. A at 22.)

The Membership Agreement controls Plaintiffs' accounts with SRP. (*See* Morris Decl. Ex. A at 2 ("This Agreement, the Rate Sheet, and Fee Schedule ("Schedule") explain the rules which

govern your account(s) and account services with us."); *Id.* at 2 ("The following terms govern our relationship with you.")). The facts and conduct alleged by Plaintiffs against SRP relate to their accounts and their relationships with the credit union. For example, Plaintiffs allege, "Plaintiffs and members of the proposed Class trusted Defendant with their PII." (ECF No. 52 ¶ 11.). Plaintiffs also state: "In collecting and maintaining its customers' PII, Defendant agreed it would safeguard the data in accordance with state law and federal law." (*Id.* at 28.) As such, each of Plaintiffs' claims arise from their account and their relationship with SRP and thus fall under the Arbitration Agreement.

In sum, a valid arbitration agreement exists, and Plaintiffs' claims are entirely encompassed by and subject to it.

### B. The Federal Arbitration Act Applies to the Arbitration Provision and Requires Enforcement of Arbitration.

The Arbitration Agreement between SRP and Plaintiffs provides that it is governed by the Federal Arbitration Act ("FAA"). (Ex. A at 23.)  Furthermore, the FAA governs any written arbitration agreement where the agreement "evidenc[es] a transaction involving commerce" and such agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."  9 U.S.C. § 2.

The Arbitration Agreement undoubtably evidences a transaction involving commerce. The Supreme Court has held that the term "involving commerce" is interpreted broadly, so that the FAA governs any arbitration agreement that affects commerce in any way. *See Allied- Bruce Terminix Companies, Inc. v. Dobson,* (513 U.S. 265, 273-74 1995) ("[T]he word 'involving' is broad and is indeed the functional equivalent of 'affecting.'"). As stated by the Supreme Court, while "banking and related financial activities are of profound local concern . . . it does not follow that these same activities lack important interstate attributes." *Lewis v. BT Inv. Managers, Inc.,*

447 U.S. 27, 38 (1980); *see also Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."). The fact that SRP services members from both South Carolina and Georgia lends even further support for the position that SRP's banking services affect interstate commerce. (*See* Morris Decl. ¶ 4.) Thus, the Arbitration Agreement is governed by the FAA.

### C. Like the FAA, South Carolina Law Requires Arbitration of Plaintiff's Claims.

Even if the court finds that the FAA does not apply, application of South Carolina law dictates the same outcome. "[C]ourts must respect and enforce a contractual provision to arbitrate as it respects and enforces all contractual provisions." *Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 856 S.E.2d 150, 153 (2021). "[U]nless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered. A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute." *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 118–19 (S.C. 2001) (internal citation omitted).

Here, the Arbitration Agreement between SRP and each Plaintiff is valid. (*See supra* section IV(A).) Thus, even if the Court finds that the FAA does not apply, SRP's Membership Agreement is subject to South Carolina law mandating the enforcement of the arbitration provision within the agreement.

### D. Plaintiffs Waived the Right to Pursue a Class Action Lawsuit.

The Arbitration Agreement also expressly provides that Plaintiffs must submit their claims on an individual basis to binding arbitration. The Arbitration Provision states, in pertinent part:

> YOU AND WE AGREE THAT NO CLASS ACTION, PRIVATE ATTORNEY
> GENERAL, OR OTHER REPRESENTATIVE CLAIMS MAY BE PURSUED IN
> ARBITRATION, NOR MAY SUCH ACTION BE PURSUED IN COURT IF
> EITHER YOU OR WE ELECT ARBITRATION.

(Morris Decl. Ex. A at 21.) Because these types of waivers are enforceable under the FAA, the

Court must compel Plaintiffs to arbitrate on an individual basis. *See, e.g., Meadows v. Cebridge*

*Acquisition, LLC*, 132 F.4th 716, 733 (4th Cir. 2025) (noting "class action waivers in arbitration

agreements are enforceable under the FAA."); *York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d

139, 153 (S.C. Ct. App. 2013) (enforcing a class action waiver provision and noting that the FAA

preempts state law banning class action waivers).

### E. Plaintiffs' Waived the Right to a Jury Trial.

The Arbitration Agreement expressly states: "AS PERMITTED BY LAW, YOU AND WE

AGREE AND UNDERSTAND THAT YOU AND WE BOTH GIVE UP THE RIGHT TO TRIAL

BY JURY. THIS IS A JURY TRIAL WAIVER." (Morris Decl. Ex. A at 21.) The Court should

enforce the plain language of the agreement by striking the jury demand. *See GMAC Com. Mortg.*

*Corp. v. Roberts*, No. 2005-UP-542, 2005 WL 7084823, at *2 (S.C. Ct. App. Oct. 12, 2005)

("[U]nder South Carolina law, a party may waive the right to a jury trial by contract.").

### F. Plaintiffs' Claims Should Be Stayed Pending Completion of Arbitration.

Finally, the instant suit should be stayed pending completion of arbitration. Allowing court

proceedings to continue during arbitration would waste both the Court's and the parties' resources

and diminish the effectiveness and efficiency that arbitration was meant to achieve. *See Adkins v.*

*Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA requires a court to stay 'any suit

or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in

writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory."); *see*

*also* 9 U.S.C. § 3.

Accordingly, Plaintiffs are required to arbitrate their claims, and all further proceedings, including discovery, should be stayed to allow for completion of such arbitration.

## V.     PLAINTIFFS LACK STANDING UNDER ARTICLE III.

Under Article III of the Constitution, a federal court may only hear cases or controversies. U.S. Const. art. III, § 2. A plaintiff must have standing to sue, *i.e.*, a "personal stake" in the outcome of the litigation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish the "irreducible constitutional minimum" of standing, a plaintiff must show "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, if standing is premised on a potential future injury, that future injury must be "certainly impending" rather than simply speculative. *See Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 300 (4th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017). The plaintiff has the burden to "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). On the face of the Complaint, Plaintiffs have failed to establish standing.[4]

### A.  Plaintiffs Have Suffered No Injury in Fact.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Smith v. Catamaran*

---

[4] The current Rule 12(b)(1) motion assumes all of the well-pleaded facts in the Complaint are true.  If required, or called for by the rules or an Order of this Court, SRP reserves the right to pose an additional factual challenge to standing based on extrinsic evidence.

*Health Sols., LLC*, 205 F. Supp. 3d 699, 705 (D.S.C. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs allege that they have suffered or will suffer: (1) unauthorized charges; (2) risk of future fraud and identity theft; (3) time, money, and effort spent mitigating the effects of the breach; (4) loss of privacy; (5) emotional distress; (6) diminished value of their PII; and (7) increased spam communications. (Comp. ¶¶ 76–87, 92–102, 107–117, 122–134, 139–149, 154–164, 169–179.) None of these allegations, even when taken as true and afforded all reasonable inferences, establish any "concrete and particularized" harm that is actual or imminent.

### i. Unauthorized Charges

Plaintiffs McGrier, Chase, and Black allege that they experienced fraudulent charges on their SRP accounts. (ECF No. 52 ¶¶ 97, 112, 127–128.) These allegations do not satisfy the injury in fact requirement because Plaintiffs have not pleaded that they have suffered any monetary loss – *i.e.*, that the charges were not reimbursed by SRP. Several courts have declined to find an injury in fact when fraudulent charges were reimbursed. *See, e.g.*, *Ables v. Brooks Bros. Grp.*, No. CV 17-4309-DMG (EX), 2018 WL 8806667, at *4 (C.D. Cal. June 7, 2018) (collecting cases). This Court should hold the same.

Plaintiffs also have not alleged that these harms are traceable to the SRP data incident. In *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 618 (4th Cir. 2018), the Fourth Circuit allowed plaintiffs' claims to proceed when they alleged actual misuse of data in the form of fraudulent credit cards taken out in their names and at least one plaintiff noted that her credit score fell by eleven points. *See Hutton.*, 892 F.3d 613 at 621–622. The allegations asserted by the plaintiffs in *Hutton* differ from those asserted here, because in *Hutton*, the fraudulent credit cards were taken out in plaintiffs' maiden names which they used when registering for the National Board of Examiners in Optometry ("NBEO"); therefore providing a temporal and substantive

connection between the NBEO incident and the fraudulent charges. *See Hutton*, 892 F.3d at 617–618. Plaintiffs have not pleaded such a connection between the alleged fraudulent charges and the SRP data incident. (*See* supra V(B).)

### ii.   Risk of Future Identity Theft

Plaintiffs largely base their risk of future identity theft allegations on the alleged exposure of their information on the dark web.[5] (*See* ECF No. 52 ¶ 3.) But Plaintiffs' allegations do not establish an actual or imminent risk of future harm. Plaintiffs allege that Nitrogen, a ransomware group, stole Plaintiffs' personal information and published a portion of the stolen information on its leak site as of October 2025. (ECF No. 52 ¶¶ 39, 41.) Plaintiffs claim that the published data includes, "client spreadsheets listing full names, account numbers, Social Security numbers, and balances; credit-rating and performance reports summarizing member financial risk metrics; and customer address and phone data combined with credit scores and dates of birth." (*Id*. ¶ 42.) These dark web allegations do not establish an actual or imminent risk of future harm.

First, Plaintiffs' list of published data elements contradicts the list of data elements that Plaintiffs plead was involved in the SRP incident. Plaintiffs allege that they each received a notice letter informing them that some combination of the following, depending on the Plaintiff, was breached in the data incident: name, data of birth, Social Security number, credit card number, financial account number. (ECF No. 52 ¶¶ 75, 91, 106, 120, 138, 153, 168.) Devoid from this list is any mention of account balances, credit-rating and performance reports, addresses, and phone data.  Accordingly, as pleaded, it is implausible to conclude that the exposure of information was from the SRP data incident given the mismatch of data elements. As stated in the Order, "to

---

[5] In addition to making dark web allegations, Plaintiff Dunn also alleges that she became a victim of identity theft when an unknown person submitted a W-2 using her name and Social Security number. (ECF No. 52 ¶ 77.) She does not specify to whom the W-2 was submitted and does not allege that any type of monetary harm has resulted from this alleged submission.

establish traceability, a plaintiff must also allege that the type of information misused "matches" the type of information exposed in the breach." (Order at 20 (citing *Santos-Pagan v. Bayamón Med. Ctr.,* No. 20-1237 (BJM), 2024 WL 4350990, at *6 (D.P.R. Sept. 30, 2024); *Welborn v. Internal Revenue Serv.,* 218 F. Supp. 3d 64, 79 (D.D.C. 2016); *In re Samsung Data Sec. Breach Litig.,*761 F. Supp. 3d 781, 800 (D.N.J. 2024); *DiPierro v. Fla. Health Scis. Ctr., Inc.,* 737 F. Supp. 3d 1314, 1330 (M.D. Fla. 2024); *Blood v. Labette Cnty. Med. Cntr.,* No. 5:22-cv-04036-HLT-KGG, 2022 WL 11745549, at *5; *Burger v. Healthcare Mgmt. Sols., LLC,* No. RDB-23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2025).)

Second, Plaintiffs' allegations of a future risk of identity theft are too speculative to constitute an injury-in-fact because they are based on an "attenuated chain of possibilities" and "speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 410, 414; *see also Beck*, 848 F.3d at 273–276 (applying the reasoning in *Clapper*). While Plaintiffs do allege that Nitrogen released Allen, Whitfield, McGrier, Dunn, and Chase's information on the dark web, the Court is still required to speculate that another wrongdoer will locate the data on the dark web and acquire it; that this unknown third party will decide to misuse the data rather than merely trade or sell it; and that this actor — or someone else who later acquires the data — will single out one of the Plaintiffs' information from among the 240,000 other putative class members, attempt to commit identity theft, and actually succeed. (Order at 11.) Nor does the Complaint allege that Nitrogen used or is likely to use Plaintiffs' information to commit identity theft itself.

Third, there exists no basis for this Court to conclude that Plaintiffs Black and Ortiz have suffered an actual or imminent injury as a result of the alleged publication of the information on the dark web. Plaintiffs expressly plead that these Plaintiffs' information was not included on the Nitrogen site. (*Id*. ¶ 43.) Plaintiffs instead allege upon "information and belief" that Plaintiffs Black

and Ortiz's information is "published on the dark web" without pleading what site the information is published on, when such information was allegedly published, or whether the information was published on the dark web as a result of the Data Incident.

### iii. Mitigation Efforts

Plaintiffs allege that they suffered injury in the form of lost time associated with attempting to mitigate the consequences from the data incident. (ECF No. 52 ¶¶ 82, 97, 112, 129, 144, 161, 174.) Given that Plaintiffs have not plausibly alleged an imminent risk of future injury, they cannot recover by alleging they may at some point in the future spend resources "monitoring" or worrying about something that may never come to pass. *See Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 487 (D.S.C. 2025) ("Plaintiffs have alleged nothing more than self-imposed precautionary expenses that are insufficient, by themselves, to confer standing."); *see also Clapper*, 568 U.S. at 416 (stating one "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

### iv. Loss of Privacy

Plaintiffs' loss of privacy allegations based on the common law torts of intrusion upon seclusion and publicity given to private life do not establish injury in fact. First, Plaintiffs voluntarily handed over their private information to SRP in exchange for services (*see* ECF No. 52 ¶ 32) which forecloses their intrusion upon seclusion claim. *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023) (finding when a plaintiff volunteers to hand over their personal information, an unwanted intrusion has not occurred). Moreover, courts have denied claims for intrusion upon seclusion when third-party hackers disclosed information and not the defendant. *See*, *e.g.*, *Roper v. Rise Interactive Media & Analytics, LLC,* No. 23 CV 1836, 2023 WL 7410641, at *8 (N.D. Ill. Nov. 9, 2023) (plaintiffs' intrusion upon seclusion claim failed because they did

not "allege that Defendant intentionally provided their private information to the hackers; indeed, they allege[d] the opposite—Defendant negligently allowed the hackers to access their data.")

Second, Plaintiffs claim for publicity given to private life does not establish injury in fact. Other federal courts have dismissed claims of publicity given to private life when, as here, an unknown threat actor allegedly gave publicity to a plaintiff's information, not a defendant. *See*, *e.g.*, *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 796 –797 (W.D. Wis. 2019) (dismissing Plaintiffs' claims for invasion of privacy because "[neither Wisconsin, Illinois, nor Iowa] recognize a claim for invasion of privacy for negligent or reckless behavior that results in a third party's disclosure of plaintiffs' private information.").

### v. Emotional Distress

Plaintiffs allege that they have suffered anxiety and other forms of emotional distress. (ECF No. 52 ¶¶ 83, 98, 113, 130, 145, 162, 175.) These allegations, too, are insufficient to confer standing. *See Stuart*, 769 F. Supp. 3d at 489 ("Plaintiffs' allegations that they have suffered 'significant fear, anxiety, and stress,' as well as loss of sleep are insufficient to support standing.") (internal citation omitted); *Beck*, 848 F.3d at 272 ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing.").

### vi. Diminished Value

Plaintiffs allege that they have suffered a loss in the value of their personally identifiable information. (ECF No. 52 ¶¶ 81, 96, 111, 126, 143, 158, 173). Many courts, including the District of South Carolina, have rejected the proposition that an individual's personal identifying information has an independent monetary value when they have not alleged that they have lost value because of the disclosure of their PII. *See Stuart*, 769 F. Supp. 3d at 487–488 (finding

plaintiffs did not plead standing based on diminution in the value of their PII); *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384, at *9 (D.S.C. Aug. 16, 2024) (same).

### vii. Increased Spam Communications

As noted in the Order, several courts have declined to find that an increase in spam communications can confer standing. (Order at 17 (collecting cases).) This Court should hold the same. Additionally, Plaintiffs still fail to show traceability because Plaintiffs do not plausibly plead that phone numbers and email addresses were included in the data incident and no plaintiff's notice letter states that phone numbers or email addresses were potentially involved. (*See* ECF No. 52 at Ex. B.)

### B. Plaintiffs' Claimed Injuries Are Not Fairly Traceable to the SRP Data Incident.

In its Order, this Court found that there was no traceability because Plaintiffs did not plead a sufficient temporal relationship with the data incident and alleged harms and the type of information allegedly misused did not "match" the type of information exposed in the breach. (Order at 19–22.) Plaintiffs' Amended Complaint does not cure these deficiencies.

First, Plaintiffs McGrier, Chase, and Black still fail to establish a temporal relationship between the data incident and the alleged fraudulent charges made on their accounts. The Amended Complaint adds no allegations regarding *when* Plaintiffs McGrier and Chase allegedly experienced fraudulent changes on their SRP account. (ECF No. 52 ¶¶ 97, 112.) Plaintiff McGrier does vaguely allege that at some indiscriminate time "[a]fter the Data Breach" she experienced fraudulent charges, but she does not elaborate on how long after the Data Breach these charges occurred. (ECF No. 52 ¶ 97.) Plaintiff Black alleges that someone fraudulently used his SRP checking account around eleven months after the alleged start of the data incident. (*See* ECF No. 52 ¶¶ 1, 128.) But this allegation fails to establish traceability because in the span of nearly a year,

Plaintiffs' information could have been involved in numerous other incidents, and Black's allegations seem to rest on an alleged compromise of his username and password tied to his SRP account – data elements that were not impacted in the Data Breach. Even if they had been, Plaintiffs themselves acknowledge that in 2023 alone, there were "3,205 compromises affecting 353,027,892 total victims." (ECF No. 52 ¶ 60.)

Second, Plaintiffs fail to plausibly allege that their alleged harms could have arisen in connection with the type of information exposed in the data incident. As noted in the Order, "although the data-breach notices sent to the three Plaintiffs indicate their "financial account number" was possibly exposed, ECF No. 19-2 at 3, 4, 9, an account number alone — without an associated routing number, debit card number, or PIN — generally cannot be used to initiate unauthorized withdrawals." (Order at 22; *see also* Order at 20–21 (citing *DiPierro,* 737 F. Supp. 3d at 1330; *Blood,* 2022 WL 11745549 at *5; *Burger*, 2024 WL 473735 at *6.)

Additionally, as explained above, while Plaintiffs Allen, Whitfield, McGrier, Dunn, and Chase now allege that they have suffered actual injury because their information has been publicized on the dark web, there is a mismatch between what is allegedly posted on the dark web the data elements impacted in the data incident. (*Supra* V(A)(ii).)

Based on the foregoing, Plaintiffs have not established that their alleged injuries are fairly traceable to the SRP data incident.

**C.  Plaintiffs Do Not Have Standing to Seek Injunctive Relief.**

In the Order, the Court found that Plaintiffs do not have standing to seek injunctive relief. (Order at 22–23.) Plaintiffs have pleaded no additional facts to support their claim for injunctive relief, as such this Court should again find that Plaintiffs lack standing to pursue such relief.

## VI.  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(b)(6). [6]

### A.  The Complaint does not plead any cognizable injury or loss.

Plaintiffs cannot state a claim as they have pleaded no plausible factual basis for injury or loss. "South Carolina law [] refuses to impose liability 'merely for the creation of risk when there are no actual damages' because to do so would 'drastically change[] the fundamental elements of a tort action' and 'make[] any amount of damages entirely speculative.'" *Morgan v. South Carolina Dep't of Rev.*, No. 2012CP4007331, 2013 WL 8335571, at *8 (S.C. Com. Pl. Feb. 27, 2013), *reconsideration denied*, 2013 WL 8335567 (S.C. Com. Pl. Apr. 16, 2013) (citations omitted); *see also TransUnion LLC*, 594 U.S. at 436. Each of Plaintiffs' claims requires demonstration of a cognizable loss suffered as a result of SRP's conduct.[7] Because Plaintiffs have pleaded no plausible factual basis for injury or loss, their claims require dismissal.

### B.  The Complaint fails to state a claim for negligence (Count One).

To state a cause of action for negligence under South Carolina law, a plaintiff must show:

---

[6] With the exception of Count VIII, on behalf of Plaintiffs Dunn, McGrier, Chase, and Whitfield as Georgia residents, Plaintiffs do not address choice-of-law issues in their Complaint or contend that law other than South Carolina law may apply. For purposes of this motion, SRP assumes that South Carolina law applies to Counts I to VII and that Georgia law or other extrinsic law that may apply to such counts would not be materially different from South Carolina law. SRP is incorporated in South Carolina and has its principal place of business in South Carolina. (ECF No. 52 ¶¶ 1, 21, 23.) As noted above, all Plaintiffs are parties to a membership agreement with SRP governed by South Carolina law. In the event law other than South Carolina law is cited or relied upon in connection with briefing or argument of this motion, SRP requests an opportunity to be heard on the choice of law issue.

[7] *See Wogan v. Kunze*, 623 S.E.2d 107, 118 (S.C. Ct. App. 2005), *aff'd as modified*, 666 S.E.2d 901 (S.C. 2008) (plaintiff must show they suffered an "injury or damages" in negligence claim); *Rd., LLC v. Beaufort Cnty.*, 857 S.E.2d 371, 376 (S.C. Ct. App. 2021) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach."); *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012) (for breach of confidential or fiduciary relationship, "damages proximately resulting from the wrongful conduct of the defendant" are required); *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000) (requiring remedy for claim of unjust enrichment); S.C. Code Ann. § 39-1-90(G)(2) (to state a claim for damages, plaintiffs must allege actual damages because of a violation of the statute).

"(1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163–64 (S.C. 2012). Plaintiffs' threadbare allegations fail to do so.

### i. A cybercrime committed by a third-party criminal does not impose a legal duty on SRP.

"In tort law, the existence of a duty is a question of law. Even if a party acts negligently and injures another, he will not be liable under the law of negligence unless his actions violated a specific legal duty owed to the other party." *McCord v. Laurens Cty. Health Care Sys.*, 838 S.E.2d 220, 225 (S.C. Ct. App. 2020) (citations omitted). At bottom, Plaintiffs allege that SRP had a duty to protect Plaintiffs' personal information from the actions of cybercriminals. (ECF No. 52 ¶¶ 215–218.) But SRP does not have a duty to protect Plaintiffs against the unlawful conduct of a third-party criminal. *McCord*, 838 S.E.2d at 225 ("In general, [South Carolina] common law recognizes no affirmative duty to control the conduct of another or to warn a third person of danger."). Moreover, no exception to this general rule applies. *See Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002) (outlining exceptions).

### ii. Industry standards and statutes do not impose a common law duty of care.

Plaintiffs also claim that SRP owed a duty of care under industry standards and the Federal Trade Commission Act (15 U.S.C. § 45) ("FTC Act"). (ECF No. 52 ¶¶ 219–220.) But none of these cited authorities imposes a duty of care under the facts alleged. Other than the rote recitation of various purported "industry standards," the Complaint offers no specifics about what duty SRP owed. (*See* ECF No. 52 ¶¶ 197–199.) Plaintiffs cannot satisfy the duty element with such vague and conclusory allegations. Moreover, Plaintiffs cannot use the FTC Act to create a duty in tort

because the statute does not confer a private right of action. *See In re Blackbaud, Inc. Customer Data Breach Litigation*, No. 3:20-mn-02972-JMC, 2021 WL 3568394, at *11 (D.S.C. Aug. 12, 2021).

### iii.   Plaintiffs have pleaded no basis for causation.

As detailed at length above, Plaintiffs have not pleaded any plausible factual basis for their contention that their alleged injuries are traceable to the incident. (Supra V(B).) "Traceability is a lower standard than proximate cause", *Meyer v. McMaster*, 394 F. Supp. 3d 550, 561 (D.S.C. 2019), so if Plaintiffs fail on traceability, then they surely fail on proximate causation. Plaintiffs go to great lengths to identify the thousands of data breaches occurring every year that have impacted tens of millions of people. (ECF No. 52 ¶¶ 59–61.) Yet, Plaintiffs never explain how Plaintiffs' alleged damages are traceable to the incident at SRP and not one of the other thousands of data breaches that have impacted other companies in recent years. In other words, in a clear example of the *post hoc ergo propter hoc* fallacy, Plaintiffs ask this Court to assume the incident caused their alleged "damages" solely because the "damages," to the extent they are tied to a time frame at all in the Complaint, happened afterward. Such speculation based on a purely temporal relationship between two events does not constitute a plausible allegation that the incident proximately caused Plaintiffs' alleged "damages." *See, e.g., Resnick AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) ("Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence.").

For these reasons, Count One of the Complaint fails to state a claim.

### C.   The Complaint fails to state a claim for negligence *per se* (Count Two).

Plaintiffs stake their negligence *per se* claim on SRP's alleged violations of certain duties

created by Section 5 of the FTC Act. (ECF No. 52 ¶¶ 236–237.) In conclusory fashion, Plaintiffs claim they are "within the class of persons that the FTCA is intended to protect" and are therefore entitled to monetary and injunctive relief. (*Id.* at ¶¶ 238, 240.) Not only are such threadbare allegations insufficient as a matter of law, but Plaintiffs also fail to plead the necessary elements required by South Carolina law.

Under South Carolina law, "If a statute is 'concerned with the protection of the public and not with the protection of an individual's private right,' it cannot support a private cause of action for negligence per se." *Winley v. Int'l Paper Co.*, No. 2:09-cv-02030-CWH, 2012 WL 13047989, at * 10 (D.S.C. Oct. 23, 2012) (citing *Doe v. Marion*, 645 S.E.2d 245, 248–49 (S.C. 2007)). The purpose of the FTC Act is protect the public, not an individual's private right. *See*, *e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 685 n.13 (D.S.C. 2021) ("The purpose of the Federal Trade Commission Act is to protect the public, not punish the wrongdoer.") (citation omitted); *Regina Corp. v. F. T. C.*, 322 F.2d 765, 768 (3d Cir. 1963) (same); *McKinney v. Misico Invs.*, LLC, No. 11-10467, 2011 WL 5244956, at *5 (E.D. Mich. Nov. 3, 2011) ("Moreover, the FTCA does not provide for a private right of action. Because the interest protected by the statute is that of the public at large, there is no private right of action to enforce its provisions."); *see also Fed. Trade Comm'n v. Raladam Co.*, 283 U.S. 643, 647–648 (1931). As such, the claim fails.

### D. The Complaint fails to state a claim for breach of implied contract (Count Three).

Plaintiffs fail to allege any of the necessary facts to plead a claim for breach of implied contract. The elements of a claim for breach of contract are: (1) existence of a contract; (2) breach of the contract; and (3) damages resulting from the breach. *Fuller v. Eastern Fire & Cas. Ins. Co.*, 124 S.E.2d 602 (S.C. 1962). To establish the existence of a contract, a plaintiff must plead an offer

and an acceptance supported by valuable consideration. *Carolina Amusement Co., Inc. v. Connecticut Nat. Life Ins. Co.*, 437 S.E.2d 122 (S.C. Ct. App. 1993). "If agreement is manifested by words, the contract is said to be express. If it is manifested by conduct, it is said to be implied." *Stanley Smith & Sons v. Limestone Coll.*, 322 S.E.2d 474, 477 (S.C. Ct. App. 1984) (internal citations omitted)). Both an express and implied contract "rest[] on an actual agreement of the parties to be bound to a particular undertaking. The parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist." *Walgreens Boots*, 470 F. Supp. 3d at 558.

Plaintiffs do not plausibly allege any factual basis for the existence of their alleged implied contract. In fact, Plaintiffs do not allege any specific interactions regarding any data security "contract" with SRP beyond "deposit[ing] money with SRP and turn[ing] over" their PII. (ECF No. 52 ¶ 251.) Plaintiffs do not plausibly plead any bargained-for contractual data security promises that the plaintiffs were entitled to receive from SRP. (*See* ECF No. 52 ¶ 251.) Such vague and conclusory activity is insufficient to establish "an actual agreement of the parties to be bound to a particular undertaking." *Walgreens Boots*, 470 F. Supp. 3d at 558.

Even if Plaintiffs could show the *existence* of an implied data security contract, their claim still fails because they do not plausibly allege the *terms* of that agreement. Plaintiffs fail to allege any facts evidencing "mutual assent to all essential terms of the contract," *Walgreens Boots*, 470 F. Supp. 3d at 558, much less those specific to data security. Without certainty regarding the essential terms of the parties' agreement, a contract has not been formed. *See Prestwick Golf Club, Inc. v. Prestwick Ltd. Partnership*, 503 S.E.2d 184, 187 (S.C. Ct. App. 1988) ("The requirement of certainty in contracts ensures that the parties intend to conclude a binding agreement and provides the court a reasonably certain basis for granting a remedy."). Plaintiffs do not identify

any contractual terms, let alone "essential and material terms," to underpin their implied contract claim. *See Davis v. Equifax, Inc.*, No. 2:20-94-RMG, 2020 WL 6128993, at \*2 (D.S.C. Oct. 19, 2020) (quoting *BCD LLC v. BMW Mfg. Co.*, LLC, 360 F. App'x 428, 434 (4th Cir. 2010)). For an implied contract to be enforceable, its terms must be sufficiently certain to "provide[] the court a reasonably certain basis for granting a remedy." *Prestwick Golf Club*, 503 S.E.2d at 187. Absent such certainty, the court cannot grant a remedy. *See id*.

Nor can the missing terms be divined from the receipt of Plaintiffs' information, which does not reveal any specific data-security measures SRP was purportedly obligated to follow. Plaintiffs choose, instead, to rely on vague and conclusory allegations that they and SRP "formed an implied contract" and, in doing so, agreed that SRP would protect their personal information. (ECF No. 52 ¶¶ 249–250.) Nothing in the Complaint indicates a mutual intent to be bound to this or to any terms at all. *See Prestwick Golf Club*, 503 S.E.2d at 187; *Walgreens Boots*, 470 F. Supp. 3d at 558. "Without the actual agreement of the parties, there is no contract." *Stanley Smith & Sons*, 322 S.E.2d at 477. These deficiencies are dispositive. This claim should be dismissed.

### E. The Complaint fails to state a claim under the South Carolina Data Breach Security Act (Count Four).

To state a claim under the South Carolina Data Breach Security Act ("SCDBA"), S.C. Code § 39-1-90, *et seq*., a plaintiff must allege a plausible factual basis for each the following elements: (1) South Carolina residency, § 39-1-90(G); (2) that the defendant is a "data owner" or "licensor," § 39-1-90(A), and not merely an entity that "maintains" data; and (3) that statutorily-defined "personally identifying information" was involved in the breach, § 39-1-90(A)-(B), (D). Plainly, four of the seven Plaintiffs are not residents of South Carolina (Plaintiffs Dunn, McGrier, Chase, and Whitfield). Also, the Complaint's conclusory allegation that "SRP is a business that owns or licenses computerized data" is simply lifted from the statutory text and not supported by

pleaded facts of any kind. This is insufficient to state a claim under SCDBA.  (ECF No. 52 ¶ 261.)

*In re Blackbaud, Inc. Customer Data Breach Litigation* is instructive.  2021 WL 3568394.
There, the court held that a conclusory assertion that the defendant "is a business that owns or
licenses computerized data" was insufficient to state a claim under SCDBA. *Id.* at *16. Plaintiffs'
allegations here are identical. (ECF No. 52 ¶ 245.) Like the plaintiffs in *Blackbaud*, Plaintiffs here
fail to include facts indicating SRP's "ownership interest or other form of legal entitlement to the
data it receives" from Plaintiffs. *Blackbaud*, 2021 WL 3568394 at *16.  At best, SRP possessed
Plaintiffs data to provide Plaintiffs with financial services. But mere possession does not satisfy
SCDBA's statutory requirements. *Id.* ("Possession may be a necessary condition of 'owning or
licensing,' but it is not sufficient to establish 'owning or licensing.'") (cleaned up) (quoting S.C.
Code Ann. § 39-l-90(A).) "Labels, conclusions, recitation of a claim's elements, and naked
assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading
standard." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir.
2019). Since Plaintiffs offer nothing more than a naked assertion that SRP "is a business that owns
or licenses" data, the claim fails.

### F.  The Complaint fails to state a claim for breach of confidentiality (Count Five).

Plaintiffs' breach of confidentiality claim is an attempt to manufacture a fiduciary or
special relationship with SRP. It fails for the same reasons as the breach of fiduciary claim
discussed below. Without any support or detail, Plaintiffs claim the "bank-customer relationship"
between Plaintiff and SRP created a "confidential relationship" through which SRP "was required
to protect certain confidential information" of Plaintiffs. (ECF No. 52 ¶ 269.) SRP is a credit union,
not a bank. But even if viewed as a bank, Plaintiffs do not plead any basis for their purported
confidential "bank-customer" relationship with SRP here; nor do they identify any source of this

alleged duty under South Carolina law. On the contrary, "South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. No matter how Plaintiffs choose to contort the facts and law applicable here, they cannot transform the "bank-customer relationship" into something beyond the boundaries defined by the law. The claim fails.

### G. The Complaint fails to state a claim for breach of fiduciary duty (Count Six).

"In order to succeed on a breach of fiduciary duty claim, a plaintiff must show the existence of a fiduciary duty, a breach of that duty, and damages proximately resulting from the breach." *Wired Fox Techs., Inc. v. Estep*, No.: 6:15-331-BHH, 2017 WL 1135288, at *10 (D.S.C. Mar. 27, 2017) (cleaned up). "The imposition of a fiduciary duty upon a party constitutes a high standard of responsibility and should not been done lightly." *Id.* Plaintiffs allege the existence of a "special relationship" between SRP and Plaintiffs whereby SRP "became guardian of Plaintiffs and Class Members' PII [Personally Identifiable Information]," and, in doing so, became a fiduciary to Plaintiffs. (*See* ECF No. 52 ¶¶ 275–276.) Plaintiffs' theory fails to establish the existence of a fiduciary duty and should be dismissed for several reasons.

*First,* "South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. Plaintiffs allege they are customers of SRP. (ECF No. 52 ¶ 31.) As a matter of law, SRP's relationship with its customers is "not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. Under certain, limited circumstances not present here, "a bank may be held to a fiduciary duty if it undertakes to advise a depositor as part of services the bank offers." *Id.* "Yet, no fiduciary relationship between a bank and its depositor exists when the bank is unaware of any special trust reposed in it." *Id.* Plaintiffs offer no facts indicating SRP advised Plaintiffs as part of the financial services SRP offers or that

SRP was aware "of any special trust reposed in it." *Id; see Duncan v. Central Loan Administration & Reporting*, 2:20-cv-2543-DCN, 2020 WL 5913519, at *4 (D.S.C. Oct. 6, 2020) (dismissing plaintiff's breach of fiduciary duty claim because "plaintiffs do not allege that [defendant] was made aware of any special confidence plaintiffs reposed in [defendant]").

*Second*, even if Plaintiffs could overcome black letter law designating their relationship with SRP as "one of creditor-debtor and not fiduciary in nature," Plaintiffs' unilateral subjective beliefs do not create a special relationship. *Regions Bank*, 582 S.E.2d at 444. "A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 416 S.E.2d 629, 631 (1992). "As a general rule, a fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence placed in him." *Regions Bank,* 582 S.E.2d at 444 (citations omitted). "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 790 (S.C. 1986).

Plaintiffs plead no facts, other than SRP receiving their personal data as part of the financial services it provides to its customers, to support acceptance by SRP of fiduciary obligations. (ECF No. 52 ¶¶ 31–32.) This lack of factual support is dispositive. Following Plaintiffs' claim to its logical conclusion would mean that every recipient of private data in the course of business would become a fiduciary or, with hindsight, could later be deemed a fiduciary by its customer. The imposition of a new and different fiduciary duty should not be done lightly. Plaintiffs should not be allowed to avail themselves of such a step here. *See Wired Fox Techs.,* 2017 WL 1135288, at

\*10. Without a special relationship that creates a duty, SRP cannot be liable on Plaintiffs' breach of fiduciary duty claim. The claim should be dismissed.

### H. The Complaint fails to state a claim for unjust enrichment (Count Seven).

To state a claim for unjust enrichment, a plaintiff must show three elements: "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167–68 (S.C. 2003) (citing *Niggel Assoc., Inc. v. Polo's of North Myrtle Beach, Inc.*, 374 S.E.2d 507 (S.C. Ct. App. 1988)). In the context of an unjust enrichment claim, "[t]he South Carolina Supreme Court defined benefits as "goods or services." *Quintech Sec. Consultants, Inc. v. Intralot USA, Inc.*, No. 2:11-cv-01689- PMD, 2011 WL 5105446, at \*4 (D.S.C. Oct. 27, 2011). "South Carolina law also clearly contemplates an expectation of payment in unjust enrichment claims." *Walgreens Boots*, 470 F. Supp. at 562-63.

In other words, to plead a claim for unjust enrichment, Plaintiffs must allege that Plaintiffs' personal information is a good or service, as defined by South Carolina law, and that Plaintiffs had an expectation that they would be compensated for SRP's temporary use of such information in the rendition of financial services. *Quintech Sec. Consultants*, 2011 WL 5105446, at \*4; *Walgreens*, 470 F. Supp. 3d at 562–63. The Complaint is devoid of such allegations. (*See* ECF No. 52 ¶¶ 284–293.) Plaintiffs merely allege their personal information has inherent value, and that by allegedly failing to secure Plaintiffs' personal information, SRP failed to fully compensate Plaintiffs for the value of their personal information. (*Id.* at ¶¶ 285–286.) Plaintiffs do not include a single allegation explaining how personal information is a good or service, as defined by South Carolina law, and there is no mention of an expectation of payment for SRP's temporary use of

31

such information in the rendition of financial services. (*See id.* at ¶¶ 284–293.) If Plaintiffs attempt to argue that they could not have reasonably expected payment in these circumstances, this argument has already been rejected by the court in *Walgreens Boots*. 470 F. Supp. 3d at 563 ("If they could not have reasonably expected payment, then they cannot state a claim for unjust enrichment."). The claim fails.

### I. The Georgia Plaintiffs fail to state a claim for litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count Eight).

Plaintiffs Dunn, McGrier, Chase, and Whitfield, as Georgia residents, seek recovery of their litigation expenses pursuant to O.C.G.A. § 13-6-11 claiming that SRP has "acted in bad faith, was stubbornly litigious, or caused Plaintiffs and the Georgia Subclass unnecessary trouble and expense" with respect to this litigation. (ECF No. 52 ¶ 295.) "Georgia law permits a plaintiff to recover litigation expenses and attorney's fees where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." *Peeples v. Caroline Container, LLC*, NO. 4:19-CV-00021-HLM, 2019 WL 12338071, at *7 (N.D. Ga. April 4, 2019) (citing O.C.G.A. § 13-6-11). "Before the plaintiff may recover such expenses, he or she must demonstrate that one of the three conditions listed in the statute exists." *Id.* (citing *Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007)). Plaintiffs Dunn, McGrier, Chase, and Whitfield have not pleaded any plausible factual basis for contending that any of the three conditions exist.

As an initial matter, a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 requires a valid underlying claim. *Ellis v. Gallof*, 469 S.E.2d 288, 289 (Ga. Ct. App. 1996) (providing "the correct principle is that plaintiffs must prevail on their basic cause of action in order to obtain litigation expenses under OCGA § 13–6–11") (cleaned up). As detailed above, Plaintiffs have failed to state a viable claim.  In cases where a claim for attorneys' fees under O.C.G.A. § 13-6-

11 have been granted, plaintiffs successfully alleged an underlying claim. *See*, *e.g.*, *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1317–1319 (N.D. Ga. 2024) (maintaining a breach of fiduciary duty claim); In re Equifax, Inc., Customer Data Sec. Breach Litig., 362 F. Supp. 3d 1295, 1325–1326; 1344–1345 (N.D. Ga. 2019) (maintaining negligence claim). Plaintiffs have failed to do so. As such, their request for attorney's fees pursuant to O.C.G.A. § 13-6-11 must be dismissed.

Plaintiffs Dunn, McGrier, Chase, and Whitfield have also failed to plead any plausible factual basis for contending that SRP acted in bad faith. "Bad faith requires more than bad judgment or negligence. Rather, it imports a 'dishonest purpose' or 'some moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" *Powell*, 508 F. Supp. 2d at 1219–1220. (citation omitted). The crux of Plaintiffs' claims is that SRP acted negligently in implementing reasonable cybersecurity safeguards to protect their personal information. (*See e.g.*, ECF No. 52 ¶¶ 25–56.) The Complaint is devoid of any allegations of "dishonest purpose," "moral obliquity,' "conscious doing of wrong," or some "ill will" by SRP.  *See Powell*, 508 F. Supp. 2d at 1219-1220. Indeed, nothing in Plaintiffs Dunn, McGrier, Chase, and Whitfield's pleaded allegations (ECF No. 52 ¶¶ 295–305) even comes close to the level of "bad faith" required by Georgia law. As such, there is no pleaded basis for a bad faith claim.

Plaintiffs Dunn, McGrier, Chase, and Whitfield have also failed to plead any plausible factual basis for contending that SRP has been stubbornly litigious or has caused Plaintiffs unnecessary trouble and expense. O.C.G.A. § 13-6-11. "When bad faith is not an issue and the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, there is not 'any evidence' to support an award pursuant to the

statute if a bona fide controversy clearly exists between the parties." *Backus Cadillac-Pontiac, Inc. v. Brown*, 365 S.E.2d 540, 541 (Ga. Ct. App. 1988) (cleaned up). As detailed at length through this Motion, a bona fide controversy clearly exists between the parties. As such, Plaintiffs' recovery of litigation expenses claim pursuant to O.C.G.A. § 13-6-11 should be dismissed as a matter of law.

## VII.    CONCLUSION

For the foregoing reasons, SRP Federal Credit Union respectfully requests that the Court compel arbitration and stay this case, or in the alternative, dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing or Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted with prejudice and without leave to amend.

ROBINSON GRAY STEPP & LAFFITTE, LLC

By: *s/ Beth Burke Richardson*
Beth Burke Richardson, Fed. I.D. No. 9335
Cordes B. Kennedy, Fed I.D. No. 12987
brichardson@robinsongray.com
ckennedy@robinsongray.com
2151 Pickens Street, Suite 500 (29201)
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400 Telephone
(803) 929-0300 Fax

POLSINELLI PC

Starr Drum (admitted *pro hac vice*)
E-Mail: sdrum@polsinelli.com
2100 Southbridge Pkwy, Suite 650
Birmingham, AL 35209
Telephone: 205.963.7155

Shundra C. Manning (admitted *pro hac vice*)
E-Mail: scmanning@polsinelli.com
501 Commerce Street, Suite 1300
Nashville, TN 37203
Telephone: 615.259.1567

**Attorneys for SRP Federal Credit Union**

Columbia, South Carolina
November 21, 2025

## CERTIFICATION OF CONSULTATION (LOCAL CIVIL RULE 7.02)

Prior to filing this motion, I conferred with opposing counsel and attempted in good faith to resolve the matter contained herein concerning the motion to compel arbitration. The parties did not reach a resolution.

*/s/ Beth Burke Richardson*
Attorney for Defendant
SRP Federal Credit Union

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on November 21, 2025. Notice of this filing will be sent to all counsel of record in the consolidated cases by electronic mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Beth Burke Richardson*
Attorney for Defendant
SRP Federal Credit Union